UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

VICTOR PENA RAMON,

   Plaintiff,

v.                                                                                      Civ. No. 24-86 GJF/DLM

JORGE MANTILLA,
GRAMPAS LOGISTICS,
and NATIONAL INDEPENDENT
TRUCKERS INSURANCE COMPANY,

   Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS
GRAMPAS AND MANTILLA'S SECOND MOTION TO DISMISS**

THIS MATTER is before the Court on Defendants Grampas Logistics ("Grampas") and Jorge Mantilla's ("Mantilla") Second Motion to Dismiss for Failure to State a Claim ("Motion"). ECF 51. The Motion is fully briefed. *See* ECFs 51, 54, 55. Having thoroughly considered the filings, arguments, and relevant law, the Court will grant the Motion in part and deny it in part. Specifically, the Court will **GRANT** the Motion to the extent it seeks dismissal of the negligent hiring, training, and supervision claims against Grampas and **DENY** the Motion to the extent it seeks dismissal of the punitive damages claim against Defendants and the negligent entrustment claim against Grampas.

**I.   BACKGROUND[1]**

Plaintiff Victor Pena Ramon's ("Pena") claims arise from a November 20, 2020 collision between himself and Mantilla, who were both driving tractor trailers in Eddy County, New

---

[1] The facts that follow are taken from the Second Amended Complaint [ECF 47] and are accepted as true for purposes of this Motion. *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

1

Mexico. ECF 47 ¶ 8. Pena sustained injuries during the collision, including lumbar disc herniation, lumbar back pain with radiculopathy, lumbar facet syndrome, and cervical facet syndrome, for which he received various forms of treatment. *Id.* ¶ 10. In addition to physical pain, he suffered emotional harm, mental anguish, and humiliation. *Id*. ¶¶ 12, 35.

The officer who responded to the collision reported that "[Mantilla's truck] failed to yield to oncoming traffic[,] causing [Pena's truck] to crash into him in a T-bone fashion" and that "the major contributing factor to this crash was . . . [Mantilla's] failure to yield to oncoming traffic." *Id.* ¶ 9. Mantilla "was cited for failure to yield to oncoming traffic." *Id*. At all relevant times, Mantilla was the "Officer/Director" of Grampas. *Id*. ¶¶ 13, 32. The 2007 Volvo tractor that Mantilla was operating at the time of the collision was owned by and entrusted to Mantilla by Grampas. *Id*. ¶ 13. Defendant National Independent Truckers Insurance ("Truckers Insurance") insured Grampas and Mantilla. *Id.* ¶ 5.

Pena filed suit against Defendants in state court. *See* ECF 1. After Truckers Insurance removed the case to federal court [ECF 1], Grampas and Mantilla moved to dismiss the claims asserted against them in the then-operative First Amended Complaint [ECF 35]. In its November 6, 2024 Memorandum Opinion and Order, this Court determined that Pena had not plausibly alleged that Grampas and Mantilla acted with a sufficiently culpable state of mind to state a claim for punitive damages. ECF 46 at 9–13. In addition, the Court determined that Pena's claims against Grampas for negligent hiring, entrustment, training, and supervision did not satisfy federal pleading standards, principally because those claims did not plausibly allege that Mantilla was an unfit driver at the time of the collision. *Id*. at 14–17. Acknowledging that the First Amended Complaint was filed in state court pursuant to a different pleading standard, the Court gave Pena an opportunity to replead his claims to comply with federal pleading standards. *Id*. at 6 n.4 & 17.

2

Pena took advantage of the opportunity, filing his Second Amended Complaint on December 6, 2024. ECF 47. The Second Amended Complaint contains the same causes of action as the earlier iteration: negligence against Mantilla (Count I); negligence *per se* against Mantilla (Count II), vicarious liability against Grampas (Count III), negligence against Grampas (Count IV), and punitive damages (Count VI[2]). *See id*. While the Second Amended Complaint largely mirrors the complaint it supersedes, it includes new allegations related to Mantilla's condition at the time of the subject collision. *See id*. For instance, it alleges: "Based upon information and belief, . . . Mantilla suffered from signs and symptoms of Alzheimer's Disease at the time of the collision." *Id*. ¶ 14. It further alleges that "Mantilla was likely suffering from a medical condition at the time of the collision . . . [and] consciously disregarded the substantial and unjustifiable risk of driving a commercial vehicle while being medically and psychologically unable to devote his attention to the safe operation of the vehicle entrusted to him by . . . Grampas." *Id*. ¶ 17.

## II. APPLICABLE LAW

### A. Rule 12(b)(6) Standard of Review

When deciding a motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotations omitted). To survive Rule 12(b)(6) review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not require "*detailed* factual allegations"; instead, it requires allegations that go beyond "labels and conclusions [or] a formulaic recitation of the elements of a

---

[2] Like the First Amended Complaint, the Second Amended Complaint does not contain a Count V. *See* ECFs 1-1; 47.

cause of action." *Twombly*, 550 U.S. at 555 (emphasis added) (internal citations and quotations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Moreover, plausibility requires factual allegations that support a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility distinction matters because only "well-pleaded" allegations can be presumed true. *Id.* at 679. Well-pleaded allegations do not include speculation or assumptions not grounded in fact. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 558); *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012). Nor do they encompass a "legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

The Rule 12(b)(6) analysis proceeds in two steps. *See Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 556). First, the Court categorizes the individual allegations as either factual and entitled to a presumption of truth, or merely legal conclusions that are not presumed true and may be ignored. *See id*. at 679. Second, the Court determines whether the factual allegations plausibly state a claim for relief. *See id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

### III. PARTIES' PRIMARY ARGUMENTS

Defendants first contend that the Second Amended Complaint fails to state a claim for punitive damages because it contains no plausible basis for asserting that Defendants acted in a willful, wanton, or reckless manner. ECF 51 at 6–7; ECF 55 at 8–9. Defendants characterize Pena's new allegations concerning Mantilla's Alzheimer's-related impairments at the time of the collision as "speculation," "fabricated," and "without any **factual** support." ECF 55 at 8. Defendants insist that the Court cannot reasonably infer from the diagnosis of "a disease that impairs . . . mental

capacity" that Defendants had the requisite mental state at the time of the collision, "over four years prior to the diagnosis." *Id*.

Second, Defendants contend that the Second Amended Complaint fails to state a cognizable claim for negligent hiring, entrustment, training, or supervision against Grampas because it does not plausibly allege any unfitness on Mantilla's part nor any defective hiring, training, or supervision by Grampas. ECF 51 at 7–9. According to Defendants, Pena "fails to allege facts that would show that Grampas *knew or should have known* that . . . Mantilla had been diagnosed with Alzheimer's *at the time of the collision*." *Id*. at 9. In Defendants' view, the only factual support for Pena's negligence claims against Grampas is his allegation that Grampas employed Mantilla and Mantilla drove a commercial tractor into a tractor operated by Pena. ECF 55 at 3.

For his part, Pena contends that the Second Amended Complaint's factual allegations give rise to a reasonable inference that Grampas knew or should have known that Mantilla had "some level of cognitive impairment" at the time of the collision, such that both Grampas and Mantilla were reckless, or demonstrated "utter indifference to the consequences," in permitting Mantilla to continue operating a commercial truck for Grampas. ECF 54 at 9–10. As such, Pena insists that he has plausibly stated a claim for punitive damages. *Id*.

Likewise, Pena maintains that the Second Amended Complaint states a claim for negligent hiring, entrustment, training, and supervision against Grampas because it alleges that Grampas and Mantilla knew or should have known Mantilla was not qualified to drive a commercial vehicle due to his failing cognitive health. *Id*. at 7. Pena further argues that a reasonable supervision and training program would have alerted Grampas to Mantilla's cognitive deficits that made him a dangerous driver. *Id*. at 8.

**IV. ANALYSIS**

At the outset, the Court notes that Defendants have not moved for the dismissal of Pena's Second Amended Complaint in its entirety. *See* ECF 51 at 1. Rather, they limit their Motion to Pena's punitive damages claim and his direct liability claims against Grampas. *See id.* (seeking dismissal of "defective claims of punitive damages and negligence" (citing ECF 47 ¶¶ 31–38)). As Pena observes, and Defendants do not dispute, Defendants do not challenge the viability of Pena's negligence or negligence *per se* claims against Mantilla, nor his vicarious liability claims against Grampas. ECFs 54 at 1; ECF 55. Accordingly, the Court restricts its analysis to Count VI (punitive damages) and Count IV (direct liability claims against Grampas) of the Second Amended Complaint.

### A. The Second Amended Complaint states a claim for punitive damages.

Because the purpose of punitive damages is to punish wrongdoing and deter similar misconduct, they are available only when the defendant has a sufficiently culpable state of mind. *See* Civ. UJI 13-1827 NMRA (stating that punitive damages require malicious, willful, reckless, wanton, fraudulent, or bad faith conduct); *Paiz v. State Farm Fire and Cas. Co.*, 880 P.2d 300, 308 (N.M. 1994). Indeed, liability for punitive damages lies only when the defendant's conduct was at least reckless—that is, "with utter indifference to the consequences." *See Couch v. Astec Indus., Inc.*, 53 P.3d 398, 411 (N.M. Ct. App. 2002) (citing *Torres v. El Paso Elec. Co.*, 987 P.2d 386 (N.M. 1999)). In the context of motor vehicle accidents, New Mexico courts have authorized punitive damages for highly erratic driving that demonstrates a sufficiently culpable state of mind but not for mere negligence. ECF 46 at 10 (citing *Sanchez v. Wiley*, 946 P.2d 650 (N.M. Ct. App. 1997); *DeMatteo v. Simon*, 812 P.2d 361 (N.M. Ct. App. 1991); *Svejcara v. Whitman*, 487 P.2d

167 (N.M. Ct. App. 1971); *Fuller v. Finley Res., Inc.*, 176 F. Supp. 3d 1263, 1267–68 (D.N.M. 2016)).

In its November 6, 2024 Memorandum Opinion and Order, this Court determined that an earlier version of Pena's complaint—his First Amended Complaint—failed to state a claim for punitive damages because its allegations were conclusory, speculative, and comprised of legal conclusions couched as factual allegations. ECF 46 at 11. The First Amended Complaint alleged that Defendants engaged in "wrongful conduct," acted with "deliberate[] indifferen[ce]" toward "the welfare and safety of Mr. Pena" and "the pedestrian public," engaged in "willful, wanton, and reckless misconduct," and that their "acts and omissions . . . [were] the result of conscious indifference to [the public's] rights and welfare." ECF 1-1 ¶¶ 32–34. Based on these allegations, the Court concluded that Pena failed to allege specific facts that demonstrate entitlement to punitive damages. ECF 46 at 11.

In contrast to the now-operative complaint, the First Amended Complaint "suppose[d] that the very nature of the collision" made it "probable that Defendant Mantilla had committed his attention to his cell phone or other device" and that "Mantilla consciously disregarded the substantial and unjustifiable risk of driving while devoting his attention away from the operation of the vehicle[.]" ECF 46 at 11 (citing ECF 1-1 ¶¶ 15–16). In the Court's assessment, these allegations were too speculative to "draw the reasonable inference that [Defendants were] liable for the misconduct alleged." *Id*. at 11–12 (citing *Iqbal*, 556 U.S. at 678). That is, the First Amended Complaint "work[ed] backwards from the accident itself to allege *possible* causes for the accident, but fail[ed] to *plausibly* allege facts that would tend to show that Mantilla acted with a culpable state of mind sufficient to award punitive damages." *Id*. at 12 (citing *Iqbal*, 556 U.S. at 679). The Court reasoned that "[e]ven if Pena had a concrete factual basis for his allegations that Mantilla

7

'had committed his attention to his cell phone or other device,' . . . cell phone use alone may not demonstrate a sufficiently culpable mental state to award punitive damages." *Id*. (citing *Fuller*, 176 F. Supp. 3d at 1268, in which Judge Lynch of this District held that a commercial driver was not liable for punitive damages because failing to yield to oncoming traffic while distracted by a cell phone did not establish a sufficiently culpable state of mind). Because there was no allegation in the First Amended Complaint that Mantilla drove erratically or violated a statute with a recklessness mens rea requirement, the Court was not convinced that Pena's theory, even if well-pled, demonstrated the requisite state of mind for the imposition of punitive damages. *Id*. (citing *Fuller*, 176 F. Supp. 3d at 1268; *Svejcara*, 487 P.2d at 168).

Notably, Pena's factual allegations and theory of liability have shifted in his most recent complaint. He no longer alleges that Mantilla must have been distracted by his cell phone or other device or that the nature of the collision itself suggests a sufficiently culpable state of mind to warrant punitive damages. *Compare* ECF 1-1 ¶¶ 16, 31–35, *with* ECF 47 ¶¶ 14–17, 34–38. Instead, Pena now alleges that Mantilla "suffered from signs and symptoms of Alzheimer's Disease at the time of the collision" and "consciously disregarded [a] substantial and unjustifiable risk of driving a commercial vehicle while being medically and psychologically unable to devote his attention to the safe operation of the vehicle entrusted to him by . . . Grampas." ECF 47 ¶¶ 14, 17. According to Pena, this "reckless and wanton conduct" justifies the imposition of punitive damages against Defendants. *Id*. ¶ 35.

Still, Defendants persist in their position that Pena fails to state a claim for punitive damages, arguing that he "has presented no evidence indicating that any of these alleged negligent acts of Defendants allegedly were performed with the requisite mental state to hold Defendants liable for punitive damages." ECF 51 at 6. Defendants acknowledge the Second Amended

Complaint's allegation that Mantilla was suffering from the "signs and symptoms of Alzheimer's Disease," but they insist that Pena "fails to provide evidence of such symptoms." *Id*. Defendants' insistence on *evidence* that Mantilla was exhibiting signs and symptoms of Alzheimer's at the time of the collision is premature, and Defendants' doubts as to whether Pena will ultimately marshal evidence that demonstrates entitlement to punitive damages should not preclude Pena from proceeding beyond the motion to dismiss stage. *See Martinez v. N. Ariz. Univ.*, No. 1:20-CV-01240-SCY, 2020 WL 9894079, at *2 (D.N.M. Dec. 3, 2020) ("A plaintiff is not obligated to plead evidence in a complaint . . . and may set forth allegations that will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."). At the pleading stage, the Court must accept as true the well-pled allegations of the complaint, even if doubtful in fact. *See Twombly*, 550 U.S. at 555.

      The Court acknowledges that Pena's allegation that Mantilla was "suffer[ing] from signs and symptoms of Alzheimer's Disease at the time of the collision" was expressly made "upon information and belief." *See* ECF 47 ¶ 14. Even so, this form of pleading does not dictate that the factual allegation was not well-pled or should be summarily rejected. *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953–55 (8th Cir. 2023). Indeed, the Federal Rules of Civil Procedure expressly contemplate pleading factual allegations in this manner. *See* Fed. R. Civ. P. 11(b)(3) ("[A]n attorney . . . certifies that to the best of the person's knowledge, *information, and belief*, . . . the factual contentions have evidentiary support or, if specifically so identified, *will likely have evidentiary support* after a reasonable opportunity for further investigation or discovery." (emphasis added)). Although the Tenth Circuit does not appear to have directly addressed the issue, other circuit courts "have largely agreed that factual allegations pled on information and belief should not be summarily rejected under *Twombly* where 'the facts are

9

peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'" *Ahern Rentals*, 59 F.4th at 954 (collecting cases). In the Court's view, the circumstances here do not foreclose the possibility that Pena may garner evidence, through Defendants' discovery responses or otherwise, to prove the allegations presently made on information and belief. *Cf. Botey v. Green*, No. 3:12-CV-1520, 2016 WL 6404074 (M.D. Penn. Sept. 7, 2016) (denying trucking company's motion for summary judgment on claims for punitive damage and negligent training, hiring and entrustment in part because Plaintiff presented GPS records indicating the driver had wandered off course during other trips around the time of the accident as well as medical opinion evidence that the driver's progressive dementia, undisputed at the time of the motion, "would have undermined [the driver's] mental acuity and impaired his fitness to drive" years earlier, at the time of the accident).

To the extent Defendants rely on the Court's rationale in its November 6, 2024 Memorandum Opinion and Order to justify dismissal of Pena's amended punitive damages claim, their reliance is misplaced for the reasons that follow. In response to Defendants' first motion to dismiss, Pena *argued* that Grampas knew Mantilla suffered from Alzheimer's Disease when it entrusted the tractor trailer to him. *See* ECF 39. Yet the First Amended Complaint made no reference to any Alzheimer's diagnosis or symptoms, and the Court characterized Pena's argument as an "attempt[] to salvage his claim for punitive damages against Grampas through briefing." ECF 46 at 13. Pena requested that the Court take judicial notice that Mantilla had been diagnosed with Alzheimer's [ECF 39 at 5], but for reasons explained in its Memorandum Opinion and Order, the Court declined to do so [ECF 46 at 6–9]. The facts the Court *did* judicially notice—that Grampas was aware that Mantilla may have Alzheimer's Disease on May 16, 2024, nearly four years after the collision—led it to the conclusion on which Defendants now rely: "Grampas might

10

have been liable for punitive damages had it sent Mantilla to drive a truck on May 17, 2024," but in the absence of any "plausible basis upon which to charge Grampas with knowledge of Mantilla's Alzheimer's on November 20, 2020[,]" the date of the collision, Pena failed to state a claim for punitive damages against Grampas. *See* ECF 55 at 8 (quoting ECF 46 at 13). Defendants now suggest that the basis for Pena's punitive damages claim is no more plausible as articulated in the Second Amended Complaint. *See* ECF 51 at 7. The Court disagrees.

Taking as true the Second Amened Complaint's allegations that on the date of the collision Mantilla suffered from the "signs and symptoms of Alzheimer's Disease," which rendered him "medically and psychologically unable to devote his attention to the safe operation of the vehicle entrusted to him by . . . Grampas," and that he "consciously disregarded" that risk [ECF 47 ¶¶ 14, 17], Pena nudges his punitive damages claim over the line from possible to plausible. In so concluding, the Court observes that courts applying New Mexico law have found analogous forms of driver impairment to justify the imposition of punitive damages. *See DeMatteo*, 812 P.2d at 364 (evidence that the driver was fatigued and had consumed marijuana shortly before the accident was sufficient to support a jury award of punitive damages); *Ration v. Stallion Transp. Inc*., No. CIV 03-110 BB/ACT, 2004 WL 7338063, at *2–3 (D.N.M. Feb. 3, 2004) (applying New Mexico law to conclude that evidence a driver was fatigued, and had been fatigued for more than 50 miles, was sufficient to withstand summary judgment on a punitive damages claim); *Sanchez*, 946 P.2d at 655 ("[e]vidence showing that a wrongdoer was intoxicated while driving is a sufficient basis for imposing punitive damages" under New Mexico law). Whether Pena can ultimately present evidence necessary for *proving* a punitive damages claim is an issue for another day.

Although Defendants correctly observe that the Second Amended Complaint does not identify the precise Alzheimer's "signs and symptoms" that Mantilla was allegedly exhibiting [*see*

11

ECF 51 at 6], the Court does not consider this lack of detail fatal to the punitive damages claim at this stage; that is, it suffices for present purposes that Pena alleges Alzheimer's symptoms interfered with Mantilla's ability to devote his attention to the operation of the tractor trailer such that he consciously disregarded substantial and unjustifiable risks to other drivers. *See Twombly*, 550 U.S. at 545 (a complaint "does not need detailed factual allegations") (citations omitted). And even without knowing precisely which symptoms Mantilla was allegedly exhibiting, there remains a reasonable inference from the allegations in the Second Amended Complaint, when viewing them in the light most favorable to Pena, that Defendants knew or should have known that Mantilla's condition rendered him unable to safely operate a commercial tractor trailer at the time of the collision. The Court will deny the Motion as to the punitive damages claim against Defendants.

### B. The Second Amended Complaint states a claim against Grampas for negligent entrustment but fails to state a claim for negligent hiring, training, or supervision.

Next, Defendants contend that the Second Amended Complaint fails to state a claim for negligent hiring, training, supervision, and entrustment for two primary reasons: (1) Pena "alleges no facts that demonstrate that Defendant knew or should have known [he] was unfit to drive"; and (2) Pena "does not identify what the purported deficiencies allegedly were or provide any factual basis" for his claims. ECF 51 at 7–13. For purposes of these direct liability claims, the Court examines the alleged acts or omissions of Grampas, rather than those of Mantilla. *See F & T Co. v. Woods*, 594 P.2d 745, 747 (N.M. 1979); *Valdez v. Warner*, 742 P.2d 517, 519 (N.M. Ct. App. 1987).

As the Court previously explained, "claims of an employer's negligent hiring, training, supervision, and entrustment require a plaintiff to show that (1) the employee at issue was unfit;

12

and (2) the employer knew or should have known of the unfitness." ECF 46 at 15 (citing *Brent v. T.G. Baker Trucking Inc*., No. 23-01036 KG/JMR, 2024 WL 4119911, at *4 (D.N.M. Sept. 9, 2024)). Applying these requirements to the allegations contained in the First Amended Complaint, the Court determined that Pena failed to state a claim against Grampas under any of his direct liability theories, because he failed to allege facts tending to show that Grampas should have known Mantilla's condition at the time of the collision rendered him unfit. ECF 46 at 15. But as discussed above, the Second Amended Complaint contains new and different allegations related to Mantilla's condition and fitness at the time of the collision, allegations which are of consequence to the analysis of the viability of Pena's direct negligence claims against Grampas.

Turning first to Pena's negligent entrustment claim, the Court observes that, under New Mexico law, a party alleging negligent entrustment of a motor vehicle must establish five elements: (1) the defendant owned or controlled the vehicle; (2) the defendant permitted the driver to operate the vehicle; (3) the defendant knew or should have known that the driver was likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others; (4) the driver was negligent in the operation of the vehicle; and (5) the driver's negligence was the cause of injury to the plaintiff. *Amparan v. Lake Powell Car Rental Cos*., 882 F.3d 943, 948 (10th Cir. 2018) (citing Civ. UJI 13-1646 NMRA; *see Gabaldon v. Erisa Mortg. Co*., 990 P.2d 197, 203 (1999)). New Mexico courts have equated the third negligent entrustment element to a now-familiar inquiry: whether the defendant knew or should have known the person to whom they were entrusting the vehicle was an incompetent or unfit driver. *Gabaldon*, 990 P.2d at 205 (citing *DeMatteo*, 812 P.2d at 363–64; *Spencer v. Gamboa*, 699 P.2d 623, 624 (N.M. Ct. App. 1985); *McCarson v. Foreman*, 692 P.2d 537, 541 (N.M. Ct. App. 1984)). Among other factors, the New Mexico Court of Appeals has considered the driver's "faculties to drive at the moment of entrustment[] and behavior

13

characteristics potentially impacting the entrustee's future capacity to operate a motor vehicle [that] were known to or available to the entrustor." *Amparan*, 882 F.3d at 948–49 (citing *DeMatteo*, 812 P.2d at 363–64; *McCarson*, 692 P.2d at 543)).

Defendants suggest that the only allegations bearing on Pena's negligent entrustment claim are those that Grampas employed Mantilla and Mantilla drove a commercial tractor into a tractor operated by Pena. *See* ECF 55 at 3. But Defendants' view of Pena's Second Amended Complaint is too narrow. Accepting as true Pena's allegation that "Mantilla suffered from signs and symptoms of Alzheimer's Disease at the time of the collision" which left him "medically and psychologically unable to devote his attention to the safe operation of the vehicle entrusted to him by . . . Grampas" [ECF 47 ¶¶ 14, 17], and construing those allegations in Pena's favor, the Court can reasonably infer that Grampas entrusted the tractor trailer to Mantilla while having reason to know Mantilla was likely to operate the vehicle in such a manner as to create an unreasonable risk of harm to other drivers. As such, Pena's allegations suffice to state a claim for negligent entrustment of a motor vehicle, and the Court will deny Defendants' Motion as to that claim.

Pena's remaining direct liability claims against Grampas fare worse. Because the Second Amended Complaint sufficiently pleads facts from which a reasonable inference arises that Grampas knew or should have known that Mantilla was unfit to drive at the time of the collision, the question that remains is whether the complaint also pleads facts plausibly alleging that some deficiency in Grampas' hiring, training, and supervision of Mantilla caused Pena's damages. *See Linkewitz v. Robert Health Trucking, Inc.*, No. CV 13-0420 WPL/RHS, 2013 WL 12138884, at *6 (D.N.M. Aug. 13, 2013); *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 165 (N.M. Ct. App. 2007); Restatement (Third) of Agency § 7.05(1) (2006)) ("A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the

14

agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent.")

With respect to Pena's negligent hiring claim,[3] the Second Amended Complaint does not allege that Mantilla was physically or mentally unfit to drive a commercial truck when Grampas first vetted or hired him, only that he was exhibiting signs and symptoms of Alzheimer's Disease at the time of the collision. *See* ECF 47 ¶¶ 14, 31, 33. And although the operative complaint alleges that Mantilla was an employee of Grampas working in the course and scope of his employment, it does not say when that employment commenced or identify any deficient hiring practices that may have contributed to the collision. *See id*. ¶¶ 28, 29. In other words, the Second Amended Complaint does not include factual allegations sufficient to raise the right to relief for negligent hiring above the speculative level. *See Luman v. Balbach Transp. Inc*., No. 2:20-CV-00200-WJ/CG, 2020 WL 6392765, at *8 (D.N.M. Nov. 2, 2020).

Similarly, the Second Amended Complaint fails to provide any factual basis for a negligent training claim against Grampas. Pena alleges that Grampas "fail[ed] to train drivers regarding safe vehicle operation on the roadways." ECF 47 ¶ 31. But as with his negligent hiring claim, Pena fails to identify a specific training deficiency on Grampas' part, let alone a deficiency that contributed to the subject collision. Pena's conclusory, formulaic allegation related to negligent training makes it no more than *possible* that Mantilla's relevant conduct can be attributed to improper training by Grampas. *See Linkewitz*, 2013 WL 12138884, at *6.

---

[3] Both sides read the Second Amended Complaint to assert a negligent hiring claim. *See* ECF 51 at 7–9; ECF 54 at 6–9. The Court's own reading of the complaint leaves it less certain whether Pena asserts such a claim. The complaint alleges that Grampas "fail[ed] to evaluate the qualifications of Defendant Mantilla," but it is not clear whether Pena meant for that allegation to support a negligent hiring or a negligent supervision claim. ECF 47 ¶ 31. Either way, the Court agrees with Defendants that Pena's conclusory allegations fail to plausibly state a claim for negligent hiring or negligent supervision.

15

And finally, with respect to Pena's negligent supervision claim, the Second Amended Complaint broadly alleges that Grampas "fail[ed] to supervise the conduct [of] its drivers." ECF 47 ¶ 31. Once again, the complaint does not identify any specific deficiencies in Grampas' supervision of its drivers or of Mantilla. Pena does recite 49 C.F.R. § 391.51, which, among other things, requires a commercial driver to obtain a medical examiner's certificate to operate a commercial vehicle. ECF 47 ¶ 32. Because "[a] diagnosis of Alzheimer's would disqualify Defendant Mantilla" from driving for Grampas, Pena alleges that Grampas "breached its duty" to him. *Id.* ¶ 33. Critically, though, the Second Amended Complaint does not allege that Mantilla was diagnosed with Alzheimer's Disease before the collision; nor does it allege that Mantilla failed to obtain, or Grampas failed to have on file, a valid medical examiner's certificate as required by 49 C.F.R. § 391.51. ECF 47 ¶¶ 32–33. Without more, Pena's allegations are insufficient to satisfy the *Twombly* standard. While it is *possible* that Grampas failed to supervise Mantilla in a manner that would have permitted it to identify conditions impairing Mantilla's driving and making him unfit, in its current form the Second Amended Complaint fails to plausibly state a claim on that basis. *See Linkewitz*, 2013 WL 12138884, at *6 (reasoning that conclusory statements that the trucking company failed to supervise its drivers failed to state a claim for negligent supervision, where the plaintiff did not allege "what the[] purported deficiencies in . . . supervision actually were" and did not, for example, allege that the trucking company failed to monitor driving logs).

In sum, because the allegations in the Second Amended Complaint do not allow the Court to draw a reasonable inference that Grampas is liable to Pena by virtue of some deficiency in its hiring, training, or supervision, *see Heard v. Loughney*, No. 16-CV-487 JP/SCY, 2016 WL 10179246, at *5 (D.N.M. July 14, 2016), the Court will grant Defendants' Motion as to those claims and dismiss them without prejudice for failure to state a claim.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Grampas Logistics and Jorge Mantilla's Second Motion to Dismiss for Failure to Support a Claim [ECF 51] is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) To the extent Defendants seek dismissal of Plaintiff's punitive damages claim, the Motion is **DENIED**.

(2) To the extent Defendants seek dismissal of Plaintiff's negligent entrustment claim against Defendant Grampas, the Motion is **DENIED**.

(3) To the extent Defendants seek dismissal of Plaintiff's negligent hiring, training, and supervision claims against Defendant Grampas, the Motion is **GRANTED**, and these claims are dismissed without prejudice.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*